## TOM COOK V. THE STATE.

No. 16053. Delivered June 14, 1933.
Rehearing Denied November 8, 1933.
Reported in 64 S. W. (2d) 148.

The opinion states the case.

*Jas. P. Rogers,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for rape; punishment, death.

There is some contention that the evidence does not show a rape by force or threats, it being averred in the indictment that the rape was by force and threats. A statement of the pertinent evidence is deemed necessary to make clear our holding that the proof is sufficient to meet the averment in the above regard.

Prosecutrix and a man friend, West, were in a car in the

suburbs of Houston. Appellant and another negro, each having a pistol, appeared at the side of the car. After taking from West what property he had, the men ordered him to drive the car down the road. He obeyed, each negro standing on the running board, one on one side and one on the other. They held their pistols in their hands. Davis, the other negro, held his pistol against the head of West. Appellant, on the side where the woman was, according to the testimony of Mr. West, did as follows: "Made us drive down the road; he held his gun right in our faces all the time. He told us to shut up talking, that he would do the talking. He fired the pistol, and said he wanted to show us the gun was loaded. * * * He said he wanted to kill us both so bad. * * * We drove about a mile and a half * * * then Tom Cook told the girl to get out of the car. The other negro with his pistol, was still standing on the running board, with the pistol back of my head. * * * Tom Cook told me to keep my damn mouth shut, that he was going to kill us both. * * * Tom Cook took the woman right behind the car. * * * I should think Tom Cook had her back of the automobile there on that road for fifteen minutes. It seemed like quite a long time to me. Then he permitted her to come back to the car where the other negro had me covered with the pistol. He (the defendant) came back with her with the pistol still on her." In another place West testified as follows: "Tom Cook had an automatic. * * * He had it in his hand. * * * He had it when he went to the back of the car. He had it when he came back. Davis stood on the running board while defendant was back of the car. * * * He had the pistol back of my head all the time. * * * The automatic Tom Cook had was the one that was fired."

Prosecutrix swore as follows: "He (referring to appellant) ordered me out of the car, and I wouldn't get out. He had a gun right in my face. I was finally taken out of the car. * * * He forced me out with the gun. He fired the gun once before that. * * * He threatened me with the gun. He said he would kill me with it. * * * Tom Cook took me out of that automobile and took me just back of the car where I was assaulted. He had his pistol at that time. * * * He caused me to lie down on the ground. He told me to get down. He held the gun on me. He had intercourse with me. * * * He still had his gun in his hand when he went back of the car. I don't remember what I said to him back of the car. I don't remember what he said to me. I am positive this is the negro. * * * How could I ever forget that negro. * * * I only left the front seat when the negro held the gun on me and forced me out of it. * * *

I have been married." Appellant did not testify. We think the above testimony amply sufficient to show an assault by force and as a result of threats.

There was no exception to the charge which submitted the case both on threats and force. There was a general verdict of guilty.

We find three bills of exception. In the first appears complaint because the court would not allow appellant to ask Mr. West if he had not been with the jury during the trial. Just what was in the mind of appellant's counsel to undertake to ask this during the trial, is not clear, but the bill is qualified by a showing that at some stage of the trial the deputy sheriff, in charge of the jury, mistaking Mr. West for one of the jurors, caught him by the arm and moved him into the jury room door. When West informed the officer that he was not a member of the jury, he was allowed to leave. On the hearing of the motion for new trial the matter was fully gone into, and the facts showed no communication on West's part with anyone of the jurors and none on their part with him. We fail to see any misconduct.

Bill of exception No. 2 complains of two questions and their answers. It is not necessary to notice question No. 1 for the reason that in the qualification put on said bill without exception, the trial court certifies that no exception was taken to the asking of this question or its answer. Question No. 2 should not have been asked, and but for the fact,—as certified in said qualification,—that appellant's own counsel asked and had answered a question which put before the jury in substance the very matter contained in the question to which appellant was objecting,—we would have been compelled to order a reversal. Mr. West, state witness, was asked, according to the complaint: "And you say he gave you the name of Cleveland Davis, who was arrested, tried and convicted of this offense?" Which was objected to, among other reasons, because it put before the jury the information that Cleveland Davis, a codefendant, had been tried and convicted of the offense for which appellant was on trial. This question Mr. West answered in the affirmative. The evil effect of this testimony is obvious, and it is greatly to be regretted that such question should have been asked. The trial court instructed the jury not to consider said question and answer. It is further shown by the qualification referred to that said witness was then taken by the defense upon cross-examination and asked as follows: "The testimony that the other negro was convicted on is not the same testimony you are giving

here today?" To this the witness answered "Yes, sir." That this obviously put before the jury the very matter claimed by appellant as harmful, in his objection to question No. 2, and its answer, viz: that the other negro had been convicted on the testimony now given, brings the whole matter squarely within the holding of this court in numerous cases wherein the rule is laid down that a reversal will not be ordered for the admission of testimony deemed objectionable, even though properly excepted to, when substantially the same testimony is before the court otherwise without objection. Boney v. State, 110 Texas Crim. Rep., 371; Anderson v. State, 110 Texas Crim. Rep., 241; Bryant v. State, 109 Texas Crim. Rep., 32; Wagner v. State, 53 Texas Crim. Rep., 306. In the light of the qualification to this bill, it manifests no reversible error.

The remaining bill sets up complaint of the refusal of the state's attorney to tell appellant's attorney the names and addresses of the parents of prosecutrix. It is averred that appellant would have gotten from them certain testimony, in effect, that prosecutrix did not tell them when she got home of having been raped. This bill is also qualified and attention called to the fact that prosecutrix herself testified on the trial that she did not tell her parents when she got home, they being quite old and she did not want to report the matter to them. She lived with them, and her name and address were on the indictment when returned, and it appears from the qualification of the court that any information desired by appellant's attorney could have been obtained by investigating at such address. No exceptions to the charge of the court appear.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Bill of exception No. 1 reflects the complaint of the appellant of the ruling of the court touching the cross-examination of the witness Carl West by counsel for the appellant. The inquiry made was as follows:

"Q. Did you go into the jury room? A. I went into the door.

"Q. How long did you stay there?"

The district attorney objected to further inquiry of the witness on the subject and the court sustained the objection. Appellant reserved an exception stating that he expected the witness to testify that during their deliberation he entered the jury room and mingled with the jurors for a few moments. Counsel

disclaimed knowledge as to whether any words were spoken by the witness or the jurors during the incident.

Upon the hearing of the motion for new trial an inquiry was made at which evidence of all persons cognizant of the incident were examined. From the inquiry it was developed that Carl West was upon the witness-stand at the time the court adjourned for lunch; that in leaving the court room the officer in charge of the jury assumed that West was one of the jurors and caused him to follow the officer into the jury room, which apparently was but a few steps away. West immediately told the officer that he was not a juror but a witness, whereupon he went no further but left. The court found upon sufficient evidence in the investigation that West did not enter the jury room and that no conversation took place between West and any of the jurors and that the incident was entirely without weight so far as fairness and legality of the trial were affected.

Bill of exception No. 2 reads as follows:

"Be it remembered that upon the trial of the above entitled and numbered cause while the witness, Carl West, was upon the witness stand the Assistant District Attorney, Mr. Frank Williford, asked the witness the following question:

" 'He told you the name of the other negro that was with him the night that he raped the young woman?'

"Answer: 'Yes, sir.'

"To which question and answer thereto the defendant then and there objected upon the grounds that the defendant was then under arrest, which objection was sustained by the court and thereupon defendant's counsel asked that the question and answer be stricken from the record and the court then turned to the jury and said:

" 'You won't consider that, gentlemen.'

"The defendant objected and excepted to the District Attorney's asking the question and to the witness' answer thereto and the court undertaking to withdraw this testimony from the jury, as he did as hereinbefore shown, could not have disabused the jury's minds of the fact that it had been testified to by the witness, namely, that the defendant had admitted to the witness that he had raped the young woman and this testimony was highly prejudicial to the defendant and was in violation of all the rules of evidence. And thereupon the State's counsel proceeded as follows:

" 'And you say he gave you the name of Cleveland Davis who has been arrested, tried, and convicted of this offense?' and the witness answered: 'Yes, sir.' To which question and answer the defendant's counsel further excepted and the court

thereon said: 'Do you want it stricken?' Defendant's Counsel: 'No, I want to take a Bill of Exception.' The Court: 'The jury won't consider that question and answer, gentlemen. Mr. Rogers, you may have your bill.'

"To the action of the District Attorney in asking the question in the manner that he did and the answer of the witness as to all of the matters hereinbefore set forth, the defendant then and there objected and excepted because at the time the defendant made such statement to the witness, if he made it, he was under arrest and further because the District Attorney had no right to convey to the jury the information through said witness that Cleveland Davis, a co-defendant, had theretofore been arrested, tried and convicted of the offense of which the defendant was then on trial, such evidence was wholly inadmissible for any purpose and the question and the answer given could have had but one effect upon the jury and that was to convey to the jury the fact that another jury in another court had tried a co-defendant upon the same testimony as was now being introduced as against this defendant and another jury had convicted a co-defendant and defendant presents this his Bill of Exception No. Two and prays that the same be approved by the court and ordered filed as a part of the record herein."

The court qualified the bill with the following statement:

"When the State asked the question, as shown in this bill, to-wit: 'He told you the name of the other negro that was with him the night that he raped the young woman,' and the witness answered, 'Yes, sir,' no objection was made until the question asked was answered. However, the court instructed the jury not to consider said question and answer and ordered the same stricken from the record, to which ruling the defendant acquiesced, and no exception was taken, as shown by the transcribed stenographer's notes of the objections and exceptions taken by the defendant during the trial. So, in approving this bill, with this explanation and qualification, this court does not certify that the defendant excepted to the district attorney asking the above question, for the record shows no exception was taken.

"When the State's counsel asked the other question shown in this same bill, to-wit: 'And you say he gave you the name of Cleveland Davis, who was arrested, tried and convicted of this offense?' and to which the witness answered, 'Yes, sir,' defendant's counsel asked for a bill of exception to the asking of said question and the answer given, whereupon the court asked counsel if he wanted said question and answer stricken from the record and the jury instructed not to consider same, defendant's counsel gave the following response: 'No, I want to take a bill

of exception,' whereupon the court instructed the jury that said question and answer were stricken from the record and that they would not consider the same; but that as soon as said witness then being interrogated was passed back to the defendant's counsel for further questioning, defendant's counsel, without objection and exception, asked the witness the same question or practically the same question involving before the jury the same matter said question being as follows: 'The testimony that the other negro was convicted on is not the same testimony as you are giving here today,' and the witness answered in response to the question of defense counsel, 'Yes, sir,' and then defendant's counsel, in the presence and hearing of the jury, asked the court for all of the testimony that was given in the trial of the other negro in the other court, whereupon the court said to counsel that if he desired to impeach the witness by showing his evidence here different to his evidence given before, then he would be permitted to lay a predicate and introduce such testimony, all of which shows that as to the first question by the state's counsel, as shown in this bill of exception, no objection was made until the question was asked and answered, and notwithstanding no motion was made that the jury be instructed not to consider it, the court ordered the same stricken from the record and instructed the jury not to consider the question and answer, to which action of the court no exception was taken by the defendant; and as to the second question quoted in the bill, asked by state's counsel, the same testimony was elicited, without objection and exception, by the defendant from the same witness before his testimony was concluded."

From bill of exception No. 2 and the qualification thereof, it is clearly made to appear that both counsel for the state and counsel for the appellant, interrogating the witness made reference to the conviction of the co-principal of the appellant in the offense for which he was on trial. The impropriety of such reference is not open to controversy. Reference during the trial of one accused of crime to the conviction of his co-principal is inhibited by statute and by the judicial interpretation thereof. In article 759, C. C. P., 1925, it is said:

"The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument."

This inhibition applies to the prior conviction of a co-principal with equal force as to that of the accused on trial. See Horn v. State, 50 Texas Crim. Rep., 404 (especially p. 409). Reference to the case will be found in Shepard's Texas Citations, Supplement of 1923-1933, p. 108, sub. 404; also Amer. Law Rep., vol. 20, pp. 1189 and 1199. Among the recent cases

are the following: Perkins v. State, 120 Texas Crim. Rep., 399; Taylor v. State, 108 Texas Crim. Rep., 104. It is not in every case, however, that a reversal must take place for the apparent transgression of the rule stated. This is illustrated in several cases cited by this court in the Perkins case, supra. See, also, Baines v. State, 43 Texas Crim. Rep., 490, 66 S. W., 847; Gaines v. State, 77 S. W., 10; Henderson v. State, 104 Texas Crim. Rep., 495; Wood v. State, 86 Texas Crim. Rep., 550. That is to say, the circumstances attending the disclosure may be such as to either render them harmless or come in such manner that the injured party cannot complain thereof. See Wade v. State, 43 Texas Crim. Rep., 207, in which it was definitely held that the conduct of the accused upon the trial in making reference to a matter which was subsequently discussed by the jury precluding his right to a reversal because of the transgression of the statute. Terrell v. State, 81 Texas Crim. Rep., 647 (see p. 651); Patterson v. State, 87 Texas Crim. Rep., 95 (see p. 104), in which many cases are cited sustaining the principle stated. Both the state and the accused brought before the jury the fact that Cleveland Davis, the alleged co-principal of the appellant in the commission of the offense for which he was on trial, had been tried and convicted, but the evidence of neither the state nor the accused disclosed the penalty that was assessed against Davis. It is apparent that the evidence was brought into the case contrary to the wishes of the judge presiding and that he promptly excluded such testimony when introduced by the state and instructed the jury to disregard it. A serious question is presented as to the authority of this court, by reason of the incident mentioned, to annul the verdict of the jury in the present appeal.

Appellant did not testify in his own behalf.

All of the state's testimony shows that the offense was committed on the night of July 20, 1932. Appellant was not arrested until a week later, on July 27th. His wife testified that she and appellant were married in March, 1932; that she was expecting the birth of a baby and that appellant was with her on July 20th, both day and night. The baby was born in September. The wife also testified that appellant was arrested about some sheep about June, 1932, and in another place she said he was in jail on July 20th, and then again later, on direct examination, she said he was with her on the night of July 20th on account of her health.

The jailer was called as a witness for the appellant and testified that appellant was arrested and put in jail on July 27th; that he did not have any record of appellant having been in jail

on July 20th. Other testimony for the appellant throws no light on his whereabouts on July 20th. About all it does establish is that he was in jail when the baby was born, and that the witnesses knew nothing about appellant being arrested on account of stealing sheep.

Vouching for the guilt of the accused is the testimony of two unimpeached witnesses. Considering the record in its entirety, including the fact that the appellant brought into the case improper testimony and the state's effort to introduce like testimony was excluded by the court, and taking note of the inconclusive testimony given upon behalf of the appellant in support of his theory of alibi, it seems manifest that the duty of this court requires that the motion for rehearing be overruled, and such is accordingly ordered.

*Rehearing overruled.*